UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Leroy R. Montgomery,** | ) | Civil Action No.:_____ |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **TransUnion, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Leroy R. Montgomery, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Leroy R. Montgomery, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. On December 15, 2022, out of curiosity, Plaintiff went to his bank, Palmetto First Federal Credit Union, to find out his credit score. On occasion, Plaintiff would go to his bank for the sole purpose to check his credit score as he was trying to improve his credit in order to be in a position to buy a home in the future. The bank representative informed Plaintiff his credit score had dropped tremendously and asked if he had taken out any credit cards. Plaintiff was shocked to hear this information because he did not use, own, nor had he even ever applied for a credit card.

16. The Palmetto First Federal Credit Union Infile Credit Report dated December 15, 2022, showed a derogatory Capital One Account reporting as 120 days past due, and a First Premier Account reporting as a charge-off. Neither of these accounts were opened by Plaintiff.

17. Palmetto First Federal Credit Union provided Plaintiff a copy of the Infile Credit Report, phone numbers for both Capital One and First Premier, and recommended that he contact the credit reporting agencies listed on the report.

18. Plaintiff immediately called Defendant to request a copy of his TransUnion credit report.

19. On December 16, 2022, Defendant forwarded a letter to Plaintiff stating that, because the address Plaintiff provided did not match the address on file, he would have to submit copies of two qualifying documents in order to verify his address. Confused by the letter and what needed to be done, Plaintiff did not respond.

20. On or about February 1, 2023, Plaintiff called the Consumer Financial Protection

Bureau ("CFPB") to report the inaccurate accounts reporting on his credit reports. Thereafter, on February 2, 2023, the CFPB sent Plaintiff a letter stating that he would need to either file a complaint online or by phone. Included with the letter was a form complaint which Plaintiff completed and returned to the CFPB.

21. After speaking with the CFPB, Plaintiff again called Defendant to request a copy of his credit report as well as to add a credit freeze.

22. On or about February 3, 2023, Defendant forwarded Plaintiff a letter confirming the credit freeze had been placed on Plaintiff's credit report and that it would remain until Plaintiff requested it be removed.

23. On or about February 8, 2023, Defendant sent Plaintiff its Investigation Results showing that the Capital One account, #517805868139****, had been verified as accurate and updated. The results also showed that the First Premier Bank account, #517800694164, was also verified as accurate and updated. As a result, both fraudulent accounts continued to be reported on the Plaintiff's credit report.

24. Upon reviewing his full credit report, which was also dated February 8, 2023, Plaintiff discovered that it contained numerous items that were incorrect including multiple addresses and phone numbers. It also contained four hard inquiries, none of which were authorized or requested by Plaintiff.

25. On or about February 24, 2023, Defendant sent Plaintiff a letter stating it had recently received a request that included Plaintiff's information, but appeared to be from a credit repair company. As a result, Defendant did not process the dispute.

26. On or about March 10, 2023, Fairway Independent Mortgage Corporation sent a

5

letter to Plaintiff stating his mortgage loan application was denied based on the number of recent inquiries on his consumer report.

27.     The mortgage company recommended Plaintiff hire a company called The Credit Guy to help him fix his credit, which Plaintiff did.

28.     On April 4, 2023, Plaintiff filed a police report with the Florence County Sheriff's Office concerning credit cards that had been taken out in his name for which he did not apply.

29.     On or about July 26, 2023, Defendant sent Plaintiff a letter stating it had recently received a request that included Plaintiff's information, but appeared to be from a credit repair company. As a result, Defendant did not process the dispute.

30.     In August, Plaintiff cancelled all services of The Credit Guy because his credit report was still not fixed. Thereafter, he called Defendant to put the credit freeze back on his credit report.

31.     On or about August 25, 2023, Defendant sent Plaintiff a letter stating it had received Plaintiff's credit freeze request and a Credit Freeze had been added to his TransUnion credit report.

32.     On the same date, August 25, 2023, Defendant sent Plaintiff a second letter stating at Plaintiff's request, it had changed his TransUnion Security Freeze Personal Identification Number and provided the new six-digit PIN. However, the pin provided was old and did not work.

33.     On or about August 31, 2023, Plaintiff received a letter from First Premier Bank concerning credit card account ending 8430. In its letter, First Premier Bank stated it had

6

completed its investigation and had determined Plaintiff was not responsible for the disputed account and had therefore sent notification to the consumer reporting agencies, including TransUnion, to remove the account from Plaintiff's credit history.

34. On or about February 8, 2024, Plaintiff obtained a copy of his TransUnion credit report online through annualcreditreport.com. Upon reviewing the credit report, Plaintiff discovered that there were still numerous items reporting that were inaccurate and didn't belong to Plaintiff.

35. On or about February 27, 2024, Plaintiff sent a dispute letter to Defendant ("First Dispute Letter") stating that several fraudulent accounts had been opened in his name without his knowledge or permission. Specifically, Plaintiff disputed: Capital One Bank Account #517805937326xxx, Capital One Bank Account #517805868139xxx, Credit One Bank Account #444796265547xxx, and First Phase/TBOM Account #426679000173xxx. Additionally, Plaintiff disputed hard inquiries for First Premier Bank, American Express, and Capital One as Plaintiff did not apply for credit from any of these entities. Finally, Plaintiff listed thirteen (13) phone numbers and an address that did not belong to him. Plaintiff requested Defendant fix his credit report so it would be correct. Plaintiff also provided his Social Security number, date of birth, and address in his letter to Defendant.

36. Defendant received Plaintiff's dispute on March 1, 2024.

37. On or about March 13, 2024, Plaintiff received a letter from Credit One Bank for account number ending in 2433. In its letter, Credit One Bank stated that after its investigation, it had found that Plaintiff was "not responsible for any previous or further balance incurred on this account," and had submitted a request to remove the tradeline to

7

the consumer reporting agencies, including TransUnion.

38.   On or about May 6, 2024, Defendant forwarded it's Investigation Results to Plaintiff. In these results, Defendant informed Plaintiff that the First Premier Bank inquiry had been removed from his credit report. Defendant also deleted the address and thirteen (13) phone numbers disputed by Plaintiff. The Capital One Bank Account #517805868139**** was verified as accurate and updated, so it continued reporting as a derogatory account on Plaintiff's credit report. Defendant also forwarded Plaintiff a copy of his updated credit report dated May 6, 2024, which showed that one of the disputed hard inquiries also remained.

39.   On or about May 23, 2024, Plaintiff sent a second dispute letter to Defendant ("Second Dispute Letter"), wherein he stated he had received Defendant's Investigation Results, but Defendant had not removed the Capital One Bank Account #517805868139xxx, (hereinafter referred to as "the Account"). He again stated it was not his account and that it was fraudulently opened without his knowledge or permission and asked Defendant to delete the account. With his letter, Plaintiff included a copy of the police report he filed. Plaintiff also provided his Social Security number, his date of birth, and his address in his letter to Defendant.

40.   Defendant received Plaintiff's Second Dispute on June 4, 2024.

41.   On or about June 7, 2024, Defendant mailed Plaintiff it's Investigation Results showing that the fraudulent Capital One Account had finally been deleted from his credit report. Defendant also mailed Plaintiff a copy of his updated credit report dated June 7, 2024, which confirmed the Capital One Account was removed. Additionally, the

previously disputed hard inquiry was no longer reporting as it had aged off.

42. On or about July 3, 2024, Defendant forwarded Plaintiff a new Investigation Results, wherein Defendant informed Plaintiff that the Capital One Account had been *reinserted* onto his credit report. Specifically, Defendant stated it had investigated the information Plaintiff disputed and the "previously deleted item has now been verified and **ADDED** back to your credit report."

43. On or about August 22, 2024, Plaintiff sent a third dispute letter to TransUnion ("Third Dispute Letter"). In his letter, Plaintiff stated he did not understand why Defendant would remove the Capital One Account and then put it right back on because he had already told them it was a fraudulent account opened in his name. Plaintiff again included a copy of the police report he filed with his dispute letter to Defendant.

44. Defendant received Plaintiff's Third Dispute Letter on August 28, 2024.

45. On or about August 30, 2024, Defendant forwarded Plaintiff a letter stating Plaintiff's fraud block request was declined.

46. That same day, Defendant sent a second letter to Plaintiff enclosing "Remedying the Effects of Identity Theft," which specifically informed Plaintiff that he had the right to ask a consumer reporting agency to block information from his credit report he believed was the result of identity theft.

47. On or about September 12, 2024, Defendant sent Plaintiff its Investigation Results stating the Capital One Account had been verified as accurate and updated. As a result the Capital One Account continued reporting on Plaintiff's TransUnion credit file as a charged off, derogatory account.

48. To date, Defendant continues to refuse to remove the fraudulent Capital One Account from Plaintiff's TransUnion credit file and continues to incorrectly report the Account as belonging to Plaintiff.

49. Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes.

50. Defendant reinserted the fraudulent Capital One Bank Account, #517805868139**** on Plaintiff's credit report after Defendant had notified Plaintiff the account had been deleted from his credit report.

51. Upon receipt of the ACDV responses, Defendant simply accepted the furnisher's verifications of the Account and did not undertake to perform any investigation of its own.

52. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

53. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union*

*Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

54. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

55. The Plaintiff adopts the averments and allegations of paragraphs 15 through 54 hereinbefore as if fully set forth herein.

56. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

57. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

58. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of a home loan, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life,

physical pain and sickness, frustration, humiliation, embarrassment, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59.     In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

60.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

61.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 60 hereinbefore as if fully set forth herein.

62.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

63.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

64.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

65.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of a home loan, lost credit

opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

66.     In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

67.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

68.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.      Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.      Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.      Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.      For such other and further relief as the Court may deem just and proper

> */s/ Penny Hays Cauley*
> Penny Hays Cauley, Fed. ID No. 10323
> Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

                         */s/ Penny Hays Cauley*
                         Of Counsel


**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169